UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Criminal Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Criminal No: 06-021 (RBW) |
| ) | |
| ) | |
| SEAN BLAKNEY ) | |
| _____ | |

**MOTION FOR CONSIDERATION OF CONDITIONS OF RELEASE,
THE DEFENDANT HAVING PREVIOUSLY CONSENTED TO DETENTION**

Defendant Sean Blakney, having previously agreed to detention, now respectfully moves this Court, through undersigned counsel, to convene a hearing to consider his release pending trial and at that hearing set reasonable conditions of release.

In support thereof, the defendant states:

**I. Factual And Procedural Background:**

On September 19, 2006, Mr. Blakney was arrested in Los Angeles, California on the warrant that issued in the instant matter following the return of the now-pending indictment. Mr. Blakney, an older cousin of lead defendant Cinquan Blakney, was born in Washington, D.C. but moved to California in 1978 at the age of ten.[1]

On or about September 21, 2006, Mr. Blakney was presented in the United States District Court for the Central District of California, Los Angeles. He was advised pursuant to Fed.Crim.Rule 40(a) and then held for transfer to this jurisdiction. Mr. Blakney's initial appearance in this jurisdiction was on October 4, 2006.

At his detention hearing on October 6, 2006, Mr. Blakney consented to entry of an order of detention, without the need for written findings. He did so without waiving his right to such a hearing in the future should circumstances warrant. Mr. Blakney consented to detention – as undersigned counsel expressly noted on the record at the time – for three reasons**:** 1) the case was by then indicted, 2) the nature of the charges

---

[1] Cinquan Blakney resided locally prior to his arrest.

triggered a presumption that no condition or combination of conditions would reasonably assure either his appearance as required or the safety of the community, 18 U.S.C. 3142(e), and, 3) at the time of the detention hearing, two bench warrants for Mr. Blakney remained outstanding in California at the time. Now, however, having had sufficient time to review the evidence underlying the indictment, and now having clarity as regards both Mr. Blakney's record of convictions and his two outstanding warrants, the defendant submits that upon consideration of the factors set forth in 18 U.S.C. 3142(g), the statutory presumption can be effectively rebutted and a combination of conditions fashioned to reasonably assure both his return to court and the safety of the community.

## II. Addressing the Section 3142(g) Factors

### I. The Nature and Circumstances of the Charged Offense and the Weight of the Evidence

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any person and the community, the first two considerations set forth at 18 U.S.C. §3142(g) for the Court to consider are 1) the nature and circumstances of the offense charged, and 2) the weight of the evidence.

Without intending to minimize the seriousness of the drug conspiracy charged, or the penalties at play in the event of conviction, it should first be noted there are no allegations in the indictment that Mr. Blakney possessed a weapon or participated in a violent crime during the course of the conspiracy. Nor, in spite of the lengthy investigation apparently undertaken, has the Government revealed or produced in the course of discovery any direct evidence that Sean Blakney participated in the alleged conspiracy. There is no evidence that he made any drug related trips to or from California, that he participated in any controlled sales to either an undercover officer or a confidential informant, or that he participated in meetings in the D.C. area or in California at which drugs were allegedly packaged and/or redistributed.

Throughout the one hundred and fifteen Counts set forth in the indictment, the predominance of which allege the unlawful use of a communication facility by one or another member of the alleged conspiracy, only

the first Count – the conspiracy Count – includes Mr. Blakney's name.[2] Neither the indictment nor the discovery provided to date sheds any light on what the Government believes Mr. Blakney did. What the discovery does reveal is that there were barely more than a few calls between the defendant and his cousin Cinquan Blakney's while a 60-day wiretap was up on Cinquan Blakney's phone.

At the defendant's request, the Government obligingly provided a CD of all of the calls intercepted on the Cinquan Blakney wiretap that included or referred to Sean Blakney.[3] During the two months the wiretap was up on Cinquan Blakney's phone, a total of eighteen (18) phone calls were placed by either Sean or Cinquan Blakney to the other. Only five (5) of those calls actually resulted in either a conversation or a voice mail message. Cinquan Blakney placed one of the calls and Sean Blakney the remaining four.

In the first of the five calls, Cinquan Blakney asks Sean Blakney if he still has "that" address. Sean Blakney thinks for a moment but isn't sure. He agrees to check and call Cinquan Blakney right back. The conversation is brief, conversational and without the typical stilted character that usually attends a conscious effort to be covert. Twenty minutes after the first call, Sean Blakney calls his cousin and tells him he cannot find the address but that he remembers it as being on Hearford Drive (phon), in Germantown. Either Sean Blakney or his cousin can be heard shuffling through papers during this part of the conversation. When Cinquan asks Sean Blakney how he's doing, Sean responds that he is "on [his] knuckles". Cinquan says the same about himself. Cinquan closes by saying that when the wind blows he will blow [Sean's] way. Again, this second conversation is brief, conversational and unstilted.

Three weeks after the two calls just noted, Sean Blakney calls Cinquan and tells him he's been trying

---

[2] Count One charges that between at least 2002 and January, 2006, Cinquan Blakney and seven other defendants conspired to distribute and possess with the intent to distribute heroin, cocaine, crack, PCP and marijuana, in violation of 21 U.S.C. 846 and 841(a)(1), (b)(1)(A), and (b)(1)(D).

[3] In providing the CD, the Government did note that the provided conversations were extracted from the data base of intercepted calls/contacts by using the one phone number known to be associated by Sean Blakney. While it is understood that if Sean Blakney used any other phones to contact Cinquan Blakney – or by Cinquan to reach Sean Blakney – that any such conversations would not be included, counsel has not been advised that the Government's investigation has identified other calls involving Sean Blakney based on voice recognition.

to reach him. Sean asks if Cinquan is alright. Explaining that he turns his phone off and on, Cinquan tells Sean that he will call him right back.

One week later, Sean Blakney calls his cousin again, this time leaving him a voice mail message. Sean Blakney tells his cousin he needs "a favor". He wants Cinquan to send him "a couple little tubes of that oil", that "shit that smelled so good". Sean aks his cousin to look out for him and he will "hit [Cinquan] up with some cash for the shit". If the Government has a 'smoking gun' against Sean Blakney, this conversation is it. Yet, if this message from Sean to his cousin Cinquan – requesting "a couple little tubes of that oil" that "smells so good", for which Sean will "hit Cinquan up for some cash" is about trafficking and not person use or something else altogether, Sean Blakney is truly an exceedingly clumsy and inexperienced drug trafficker. That he would be one or both of those things at the time of this voice-mail message – at this point now three years into the term of the alleged conspiracy – is counter-intuitive. Finally, and pointedly, an argument that this message relates to drug trafficking in the usual sense is separately counter-intuitive given the Government's expressed theory that Sean Blakney was the California supplier to the alleged conspiracy.

Three weeks after the call just noted, Sean Blakney called his cousin one more time. It would seem clear from a listening to this brief conversation – just as it was to the agent who summarized the conversation – that Sean Blakney was hoping for some financial help from his cousin. What the assistance is for is unclear from the conversation, but there was a reference during the conversation to a message Sean Blakney left Cinquan the day before; something about Sean Blakney's vehicle. Of note in this conversation is that Cinquan Blakney is irritated with Sean's need to talk about what he needs, although it is unclear whether that was due to Cinquan feeling harassed by his cousin's request or his concern for reasons Sean wouldn't be aware. However, it is clear from Sean Blakney's wanting to continue discussing what he needs in spite of being repeatedly interrupted by Cinquan is that Sean does not understand his cousin's irritation. There is clearly no concern by Sean Blakney about the conversation being overheard.

In short, the allegations against Sean Blakney would appear based almost entirely on the Government's interpretation of a handful of conversations – one or two of which are arguably suspicious because of what

Cinquan Blakney was believed to have been engaged in at the time, not because of what either of them are saying during the few conversations. Given the very minimal case against Sean Blakney, given his misdemeanor, non-violent criminal record (discussed below), and given that the alleged leader of the conspiracy – Cinquan Blakney – is incarcerated and the alleged conspiracy otherwise shut down, the Government's anticipated rejoinder that Mr. Blakney's dangerousness is established by clear and convincing evidence will lack any real footing.

**ii. The Defendant's History and Characteristics**

Focusing on the remaining considerations under Section 3142, as noted previously, although born in the District of Columbia, Mr. Davis moved to California in 1978, at the age of ten, and has resided there ever since. Although separated for many years from his wife, he has resided with his long-time girlfriend (on and off for fourteen (14) years, Tiesha Rochell, for four years. Ms. Rochelle verified Mr. Blakney's personal information for Pre-trial Services in California upon his arrest there.

Unemployed at the time of his arrest, Mr. Blakney was awaiting approval of his application for SSI disability benefits due to a significant injury to his right leg. His knee cap has migrated downward toward his shin and needs to be either relocated or replaced. As a result Mr. Blakney walks slowly with the help of a cane, and with a very noticeable limp.

Mr. Blakney has been twice convicted. Undersigned counsel has obtained records from California and can represent that in August, 2000, Mr. Blakney was convicted of misdemeanor theft in Case No. DOWODW05502-01, Downey Superior Court, Los Angeles, California. In July of 2002, he was again convicted of misdemeanor theft in Case No. COM2CM03199-01, Compton Superior Court, Los Angeles, California. He is not on probation or parole.

Separately, Mr. Blakney has a pending matter in Los Angeles charging several counts of welfare fraud and corresponding counts of perjury relating the application for individual welfare payments. A bench warrant has issued in the case. Mr. Blakney's public defender in that matter has confirmed for counsel that should Mr. Blakney choose to do so, he can resolve the matter with a misdemeanor plea upon payment of

a significant portion of the amount that is alleged to have been wrongfully received (approximately $6,000). Incarceration would in that event be avoided. Mr. Blakney's family members have offered to pool their resources to help Mr. Blakney make that payment, enter that plea, and then return to this jurisdiction, should that be his choice.   Mr. Blakney has a second pending matter in Riverside, California for which a bench warrant has separately issued. The charges are 1) driving with a suspended commercial driver's license, and 2) unsafe speed conditions. It is expected that this matter too can readily be resolved without the risk of incarceration, should that be Mr. Blakney's choice.

As to the two matters just noted, there are no detainers pending at this time. Were there, it is highly unlikely that California would extradite. Should this Court consider releasing Mr. Blakney but require that he immediately address his two warrants, Mr. Blakney will willingly do so rather than continue sit in jail pending the onset of his trial in March, 2008.

Whatever this Court might require as regards addressing the two bench warrants, the defendant will not request that he be allowed to return to California to reside pending the trial of this matter. Nor would he want to given his need to consult with his counsel. His sister, Kim Brown, has offered to have Mr. Blakney stay with her should this Court release him. Ms. Brown is 49 years old and lives with her husband. She has no criminal record and has been at the same address in Temple Hills, Maryland for 11 years. She is willing to make whatever adjustments are necessary to her phone to accommodate the PSA electronic home monitoring program and will otherwise agree to report any violations of release conditions that might be set. With little in the way of resources without family assistance, being physically limited in his movement, and under the supervision of older sister, it cannot be legitimately argued that Mr. Blakney is a significant risk of flight.

### III. Conclusion

The Government's evidence as to Sean Blakney – combined with the fact that the alleged leader is incarcerated and the alleged operation apparently shut down – falls far short of establishing by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community and Mr. Blakney's appearance in court as directed.

The defendant respectfully requests a hearing on this matter at the Court's earliest convenience.

WHEREFORE, for the above stated reasons, and for any other reasons raised at a hearing on this Motion, the defendant respectfully moves this Court to convene a hearing to impose reasonable conditions of release pending trial.

Respectfully submitted,

JOSEPH BESHOURI
D.C. Bar No. 412199
419 - 7th Street, N.W., Suite 201
Washington, D.C. 20004
(202) 842-0420