UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 06-021 (RBW) |
| : | |
| SEAN BLAKNEY, : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR**
**CONSIDERATION OF CONDITIONS OF RELEASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this opposition to the defendant's Motion For Consideration of Conditions of Release. In support of this opposition, the Government relies on the points and authorities set forth in this memorandum and at any hearing on this matter.

**BACKGROUND**

On or about August 23, 2006, Sean Blakney and seven co-defendants were indicted by a federal grand jury sitting in the District of Columbia in a 115-count indictment. The defendant was indicted in Count One, Conspiracy To Distribute and Possess With Intent to Distribute Heroin, Cocaine, Cocaine Base, Phencyclidine and Cannabis, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(I), (b)(1)(A)(ii), (b)(1)(A)(iii), (b)(1)(A)(iv), (b)(1)(D), and 846. On or about September 15, 2006, the defendant was arrested in Los Angeles, California. After being transferred from Los Angeles to the District of Columbia, a detention hearing was held on October 10, 2006, before the Honorable Deborah A. Robinson. At that hearing, the defendant waived his right to a detention hearing at that time, and conceded his pre-trial detention pending trial.

In support of this opposition, the United States proffers that in the summer of 2005, defendant Sean Blakney and co-defendant Cinquan Blakney flew together from Washington, D.C. to California for the purpose of defendant introducing Cinquan Blakney to California suppliers of

phencyclidine ("PCP"), cocaine and marijuana. The aim was to facilitate Cinquan Blakney's acquisition of large quantities of those illegal drugs for redistribution in the District of Columbia. As a result of those introductions, Cinquan Blakney, through Sean Blakney, acquired those drugs. Defendant Sean Blakney then orchestrated shipments of phencyclidine ("PCP"), cocaine and marijuana to Cinquan Blakney in the Washington, D.C. area. The defendant obtained at least two separate quantities of PCP of approximately 16-20 ounces each, packaged the PCP and, according to shipping records and other evidence, transported the shipments via commercial courier from Los Angeles to the D.C. area. Also during at least one of those occasion, Sean Blakney obtained at least a half kilogram of cocaine, packaged the cocaine and transported the shipment via commercial courier from Los Angeles to the D.C. area. The drug shipments were received by his co-conspirators, including Cinquan Blakney, and redistributed in the D.C. area.

During the investigation of this drug conspiracy, the Federal Bureau of Investigation utilized court-authorized wiretaps. During the interception period, several telephone calls between the defendant and Cinquan Blakney were intercepted which further evidence defendant's involvement in a drug conspiracy. On November 11, 2005, Cinquan Blakney called the defendant and asked if the defendant still had "that address." The address Cinquan Blakney was seeking is the address to which the defendant had made at least two large shipment of illegal narcotics to co-defendant Blakney. Cinquan Blakney stated that he needs that jaunt. The defendant replied by asking Cinquan Blakney "if he needs him to shoot something that way," a reference to another shipment of illegal narcotics. Cinquan Blakney then again asked the defendant to find the address. During a call a few minutes later, the defendant told Cinquan Blakney that he could not find the address but then attempted to recall it by memory. The defendant remembered the address as Hearford Drive, in

Germantown.[1]  Cinquan Blakney then told the defendant that "when the wind blow, I blow your way," a reference to Cinquan Blakney planning to request a future shipment of illegal drugs from the defendant when the need arises.  On December 21, 2005, the defendant called Cinquan Blakney and left a voice-mail message stating that he needed a favor.  The defendant stated that he needed Cinquan to send the defendant "something" bad.  The defendant said he needed "some of that oil, bad," and that he would "hook you up with some money."  He told Cinquan Blakney to look out for his cousin, the defendant.  He said the oil smells really good and he asked that Cinquan send him a couple of tubes "of that shit."  The defendant designated the voice-mail message as "urgent."[2]  A few weeks later, on January 12, 2006, the defendant called Cinquan Blakney and said he really needed something.  Using very cryptic and vague language, Cinquan Blakney told the defendant not to worry about it, that the defendant will get "it" from Cinquan Blakney when Cinquan Blakney can get "it" to the defendant.  The defendant told Cinquan to holler at him when he has it because the defendant "was stuck."  Cinquan Blakney cut the defendant off at that point, was upset with the defendant and told the defendant that he did not need to waste a "whole bunch of talk on it" and did not need to be talking about "that subject."  The defendant stated that he was not sure that Cinquan understood what the defendant was requesting during an earlier conversation.  Cinquan Blakney assured the defendant that he understood what the defendant meant based upon the words (believed to be code words) the defendant used in the previous conversation and that it was unnecessary to talk

---

[1] Although this is not an accurate reference to the address where the defendant sent two large shipments of illegal drugs, it is a reasonably close reference.

[2] Agents of the FBI who are familiar with this investigation believe that this is drug trafficking call, in particular with respect to PCP.  It is common for drug traffickers experiencing a dry period to look to those to whom they have supplied drugs for their present needs.

about it. This conversation, to adopt the words of the defense in its bond review motion, has the "typical stilted character that usually attends a conscious effort to be covert." See Motion for Considerations of Release at 3. Also, as the defense acknowledges, Cinquan Blakney was agitated because the defendant was talking about "that subject" on the phone and repeatedly cut the defendant off. The defendant, in turn, was careful not to talk about "that subject" explicitly, but even a cryptic reference to "that subject" on the telephone, which was in fact bugged, was beyond Cinquan Blakney's comfort level. Contrary to the assertion of the defense, these conversations were cryptic, thus evidencing their criminal nature and the defendant's intimate involvement in the narcotics trafficking conspiracy.

     Moreover, the defense fails to mention in its bond review motion that the defendant himself has corroborated his involvement in this drug conspiracy. On or about September 18, 2006, after his arrest, the defendant agreed to give a statement to law enforcement. Defendant advised law enforcement that co-defendant Cinquan Blakney is his cousin. The defendant stated that in the summer of 2005, he had planned to travel from Los Angeles to Washington, D.C. Prior to the commencement of the trip, the defendant was contacted by co-defendant Cinquan Blakney. Co-defendant Blakney wanted the defendant to introduce co-defendant Blakney to the defendant's "marijuana connections." Co-defendant Blakney sought the defendant's assistance in obtaining a good price for marijuana. Co-defendant Blakney told the defendant he was interested in purchasing the marijuana for $900 per pound.

     According to the defendant, in June of 2005, the defendant traveled to Washington, D.C., and met co-defendant Blakney. The defendant stayed in the D.C. area for a few weeks, met co-defendant Blakney, and co-defendant Blakney requested that the defendant assist co-defendant

Blakney with obtaining pounds of marijuana by introducing co-defendant Blakney to the defendant's marijuana supplier. In July of 2005, both the defendant and co-defendant Blakney traveled back to Los Angeles. Co-defendant Blakney's purpose of travel was to obtain drugs to sell in the D.C. area. The defendant acknowledged that, once in Los Angeles, he introduced co-defendant Blakney to two of his marijuana suppliers. One of the suppliers that the defendant introduced co-defendant Blakney to agreed to supply co-defendant with 10 pounds of marijuana. Co-defendant Blakney wire transferred $1,500 to the defendant for assisting co-defendant Blakney with the introduction to drug traffickers. Although the defendant limited his involvement in the conspiracy to the trafficking of large amounts of marijuana from California to the District of Columbia, the defendant's own statements establish his involvement as a central player in the drug trafficking conspiracy.

This is not the first time the defendant has been involved in criminal activity. At the time of the defendant's arrest, the defendant had the following arrests and criminal convictions: a 2001 theft conviction (misdemeanor); a 2002 theft conviction (misdemeanor), arising out of Los Angeles California; 2003 fraud and perjury offenses, with respect to which the defendant failed to appear in court and a warrant was issued for his arrest; 2006 perjury, grand theft, and fraud offenses, which were at bench warrant status for the defendant's failure to appear at the time of his arrest in this case. The defendant also forfeited his driving privileges in 2003 for failure to appear.

## DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et. seq.* states that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, danger to the community

5

alone is a sufficient basis to order pretrial detention. United States v. Salerno, 481 U.S. 739, 755 (1987); United States v. Simpkins, 826 F.2d 94, 98 (D.C.Cir. 1987). In addition, 18 U.S.C. § 3142(e) provides that in a case where the defendant has committed a crime of violence or a drug offense where a maximum term of imprisonment of ten years or more is prescribed, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

Under 18 U.S.C. § 3142(g), a judicial officer must take into account the following before ordering detention: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the defendant's release. 18 U.S.C. § 3142(g).

In the instant case, the defendant is charged with Conspiracy To Distribute and Possess With Intent to Distribute Heroin, Cocaine, Cocaine Base, Phencyclidine and Cannabis, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(I), (b)(1)(A)(ii), (b)(1)(A)(iii), (b)(1)(A)(iv), (b)(1)(D), and 846, which carries a mandatory minimum term of imprisonment of ten years, and a maximum term of life imprisonment. On October 10, 2006, the defendant initially waived a detention hearing and conceded his pre-trial detention pending trial. If a hearing was held at that time, the government would have proffered evidence to establish the charged offense. (At the time of the detention hearing the defendant and his co-defendants had already been indicted by a grand jury). First, the government would have established that there was probable cause to believe that the defendant committed an offense in violation of 21 U.S.C. § 841(a)(1). As noted above, the defendant shipped PCP, cocaine and marijuana from Los Angeles to the Washington, D.C. area, to his co-defendant

Blakney.  Further, by the defendant's own admission, he introduced co-defendant Blakney to two known drug traffickers.  The defendant, by his own admission, was paid by co-defendant Blakney for introducing co-defendant Blakney to his drug suppliers.  Based on the foregoing, the defendant is unable to overcome the presumption in favor of detention, because the proffered evidence clearly and convincingly established that the defendant's pretrial release would constitute an unreasonable risk of danger to the community.

Weighing the factors set forth in 18 U.S. C. § 3142(g), the Court should find that the nature and circumstances of the offense and the weight of the evidence favor detention.

In addition at the time of the defendant's arrest, the defendant had two outstanding bench warrants for failure to appear, in Los Angeles. Although the defendant may argue to the Court that the charges which gave rise to the bench warrants for failure to appear were minor, non-violent offenses, the defendant's conduct clearly gives the Court a window into how the defendant would respond if he were released.  The defendant would not follow court orders in his local jurisdiction, therefore, the defendant it is only logical that he will not follow this Court's pre-trial release conditions.   Also the nature of the defendant's prior arrests and convictions establish that the defendant is not trustworthy and suitable for release with confidence that he would return to court to fact these serious charges.

The defendant's criminal history and failure to appear at previously scheduled court proceeding in Los Angeles, coupled with the offense with which he is currently charged, establishes that the defendant continues to engage in criminal activity and that he poses a danger to the community.  If convicted, defendant faces a minimum mandatory sentence of ten years incarceration, with a maximum sentence of life imprisonment.

Based on the foregoing, the Court should find was that the nature and circumstances of the offense charged; the weight of the evidence against the defendant; and the nature and seriousness of the danger to any person or to the community which would be posed by the defendant's release warrant pretrial detention.

## CONCLUSION

For all of the reasons set forth above, the Government respectfully requests that this Court deny the defendant's Motion For Consideration of Conditions of Release.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
Bar No. 498610

_____GEORGE ELIOPOULOS
ANTHONY SCARPELLI
Assistant United States Attorneys
D.C. Bar No. 390601
Organized Crime & Narcotics
  Trafficking Section
555 4th Street, N.W.  #4106
Washington, DC 20530
Phone: (202) 514-7294